**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JANE A. TAYLOR,

                            Plaintiff,

        vs.                                                    1:13-CV-740
                                                               (NAM/CFH)

THE NEW YORK STATE OFFICE FOR PEOPLE
WITH DEVELOPMENTAL DISABILITIES,
CATHY TURCK, individually, and CATHY
LABARGE, individually,

                            Defendants.
_____

**APPEARANCES:**                          **OF COUNSEL:**

Sadowski, Fischer Law Firm               RAPHAEL KATZ, ESQ.
39 Broadway, 15th Floor                  ROBERT W. SANDOWSKI, ESQ.
New York, New York 10006
Attorneys for Plaintiff

Office of Attorney General               MICHAEL G. McCARTIN, ESQ.
The Capitol
Albany, New York 12224
Attorneys for Defendants

**CHRISTIAN F. HUMMEL,**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION & ORDER[1]

Defendants The New York State Office for People with Developmental

_____

[1] "A magistrate judge . . . may issue orders regarding non-dispositive pre-trial matters." American Stock Exchange, LLC v. Mopex, Inc., 215 F.R.D. 87, 90 (S.D.N.Y. 2002) (citing Hoar v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990). "Matters concerning discovery are generally considered non-dispositive of the litigation." Id. at 90 (citing Hoar, 900 F.2d at 525). The Second Circuit has noted, in the context of Rule 37 sanctions, that magistrate judges have the authority to issue such sanctions "because of a magistrate judge's statutory, institutional, and historical authority over discovery proceedings." Kiobel v. Millson, 592 F.3d 78, 88 (2d Cir. 2010) ("[M]agistrate judges have the power to impose sanctions for violations of discovery orders.").

Disabilities ("OPWDD"), Cathy Turck, and Cathy LaBarge collectively move to preclude plaintiff from having the following witnesses testify at trial: Brian Beaver, G.B., G.P., Danny Hakim, Bonnie Lawrence, Roy Schult,[2] Allison Mattoon, and Juanita Wells. Dkt. No. 71, 73.[3] Plaintiff opposed, Dkt. No. 72, and defendants filed a Reply. Dkt. No. 73. For the following reasons, defendants' motion to preclude is granted in part and denied in part.

## I. Background[4]

### A. General Procedural History

Plaintiff Jane A. Taylor commenced this lawsuit on June 24, 2013, pursuant to 42 U.S.C. § 1983, with the filing of a complaint. Dkt. No. 1 ("Compl."). On October 7, 2013, defendants filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1), (6). Dkt. No. 12. Plaintiff opposed. Dkt. No. 16. Defendants filed a reply. Dkt. No. 18. Plaintiff filed a sur-reply. Dkt. No. 20. On March 24, 2014, Senior District Judge Norman A. Mordue granted in part and denied in part defendants' motion to dismiss. Dkt. No. 26. Judge Mordue

---

[2] Plaintiff spells this proposed witness' name as "Shult," "Schult," and Shultz in her submissions to the Court. See Dkt. No. 67 at 7, Dkt. No. 71-1 at 3, Dkt. No. 72 at 18. Defendants refer to the proposed witness as Schult. Dkt. No. 73. The Court will hereafter use the spelling, "Schult" unless informed by the parties that this spelling is incorrect.

[3] Defendants also sought to preclude the testimony of Kenneth Baker, Michael Carey, and Jeff Monsour, but plaintiff since withdrew her request to add these individuals as potential trial witnesses. Dkt. Nos. 71-8 at 16, 72 at 8.

[4] References to page numbers refer to the pagination generated by the Court's CM/ECF filing system.

dismissed with prejudice all claims against defendant OPWDD, all claims against defendants LaBarge and Turck in their official capacities, and all claims against defendants LaBarge and Turck in their individual capacities excepting plaintiff's first cause of action for retaliation in violation of her First Amendment rights. Id.

On June 3, 2014, this Court entered a Uniform Pretrial Scheduling Order, setting a deadline for joinder of parties and amended pleadings as July 11, 2014, a discovery deadline of January 15, 2015, and motions deadline of March 16, 2015. See Dkt. No. 38. On June 13, 2014, defendants filed a motion to amend/correct their answer. Dkt. No. 40. On July 11, 2014, plaintiff filed a motion to amend her complaint. Dkt. Nos. 44, 45. Defendants opposed. Dkt. No. 46. Plaintiff moved for leave to file a reply. Dkt. No. 49. In a text order, the undersigned granted the motion "to the extent that the undersigned will consider both the memorandum of law and red-line version of the amended complaint provided as attachments to 1& 2 to Dkt. No. 49 when deciding the pending motion to amend." Dkt. No. 41. On August 12, 2014, defendants requested a forty-five day extension to respond to plaintiff's discovery demands, which the Court granted. Dkt. Nos. 47, 48.

In a Decision and Order dated September 30, 2014, the undersigned granted the motion to amend the answer and granted in part and denied in part the motion to amend the complaint to the extent that the undersigned permitted plaintiff to serve an amended complaint to include, in addition to the surviving First Amendment retaliation claim: (1) Rehabilitation Act claims against OPWDD, and (2) New York State Human Rights Law claims against defendants Turck and LaBarge in their individual capacities

3

for aiding and abetting discrimination pursuant to New York Executive Law § 296.6, and denied as futile any additional or reinstated claims.  Dkt. No. 52.  On October 9, 2014, plaintiff filed a second amended complaint.  Dkt. No. 53.  On October 27, 2014, defendants filed an answer to the second amended complaint.  Dkt. No. 55.[5]  On December 29, 2014, plaintiff filed a third amended complaint.  Dkt. No. 58.  On December 31, 2014, parties filed a joint stipulation regarding plaintiff's filing of the third amended complaint.  Dkt. No. 60.  On January 14, 2015, defendants filed an answer to the third amended complaint.  Dkt. No. 61.[6]

## B.  Present Discovery Dispute

Plaintiff served her initial disclosure pursuant to Fed. R. Civ. P. 26(a)(1) on September 19, 2014.  Dkt. No. 71-2.  This contained a list of twenty-three witnesses.  Id.  Other than for plaintiff, counsel did not reveal the subject matter of the witnesses' proposed testimony, though she included titles/positions for most witnesses.  Id.  On July 17, 2015, plaintiff served her answers to defendants' first set of interrogatories.  Dkt. No. 71-3.  As relevant here, in response to defendants' interrogatory number four, which asks plaintiff to "[i]dentify any individual that you, your counsel, or any investigator, or agent, are aware of that witnessed any of the events alleged in the

---

[5]  On November 12, 2014, defendants requested a second extension of discovery.  Dkt. No. 56. The Court granted an extension of discovery to May 19, 2015, with motions due by June 8, 2015.  Dkt. No. 57.

[6]  On April 17, 2015, defendants requested a third extension of discovery and dispositive motion deadlines.  Dkt. No. 62.  On April 20, 2015, the Court granted defendants' request, extending discovery to September 18, 2015 and the dispositive motion deadline to November 18, 2015.  Dkt. No. 63.

above-captioned lawsuit, or any act, omission or wrong allegedly committed by any of the defendants[,]" plaintiff provided one witness, Rebecca Meade, Residential Manager, and "respectfully refers Defendant's [sic] to Plaintiff's document production. See Exhibits 2, 3, 4, 5, and 6." Id. at 3-4.

On July 30, 2015, plaintiff served a "witness list" containing twenty individuals' names. Dkt. No. 71-5. The list did not include the subject matter of the witnesses' testimony. Id. On August 10, 2015, plaintiff served a second witness list. Dkt. No. 71-6. This list contained twelve witnesses, and did not include the subject matter of their proposed testimony. Id. On August 17, 2015, plaintiff served a supplemental response to defendants' first set of demands, but did not add additional witnesses responsive to interrogatory number four. Dkt. No. 71-4. On September 17, 2015, plaintiff served a third witness list on defendants by e-mail. Dkt. No. 71-7. This list contained forty-four witnesses, with the individuals' titles or general positions, but did not include the proposed subject matter of their testimony. Id.

On September 17, 2015, defendants filed a letter motion requesting a telephone conference with the Court "to address witness-related issues that first developed at the close of business on September 15, 2015." Dkt. No. 64. Defendants provided that plaintiff's counsel

> first notified the undersigned that he intended to put seven (7) additional witnesses on his witness list, persons who were not identified in Plaintiff's Rule 26(a)(1)(A)(i) disclosures, nor were they identified in response to Defendants' Interrogatory No. 4 (served on Plaintiff's counsel on January 21, 2015), which explicitly asked for the identification of all persons who 'witnessed any of the events alleged in the above-captioned lawsuit,' nor were they

5

identified in any amended notice, email, or letter.

Dkt. No. 64 at 1.  On September 18, 2015, defendants filed a letter motion with "additional information that has developed since Docket No. 64 was filed by the Defendants . . . ."  Dkt. No. 65.  Defendants provided that "[a]t 6:22 PM" on September 17, 2015, "Plaintiff's counsel supplemented their witness list in writing by adding dozens of new names, now totaling 44 witnesses." Id. at 1.  Defendants provided further that on July 17, 2015, "Plaintiff identified a single witness, Rebecca Meade . . . . On August 17, 2015, Plaintiff's counsel supplemented Plaintiff's responses to the January 21, 2015 discovery demand, but she did not identify any additional witnesses that were responsive to Interrogatory No. 4." Id.  On September 28, 2015, plaintiff filed a letter brief in opposition to defendants' letters dated September 17 and 18, 2015 (Dkt. Nos. 65, 65).  Dkt. No. 67.  In this letter brief, plaintiff included for the first time the proposed subject matter of the testimony of forty-four witnesses.  Id.

On October 5, 2015, following a conference with all parties, the undersigned entered a text order setting a briefing schedule regarding whether plaintiff should be precluded from presenting witnesses not identified in her Rule 26 disclosure or in response to interrogatories.  Dkt. No. 70.

## II.  Review of Present Motion

Defendants seek to preclude plaintiff from having eight witnesses testify at trial due to her alleged failure to comply with the Rule 26(a)(1)(A)(i) discovery disclosure deadline.  Defendants argue that plaintiff's (1) September 19, 2014 Rule 26(a)(1)(A)(i)

6

disclosure was defective insofar as she failed to timely provide the "subject matter" of the potential witnesses' testimony, (2) September 28, 2015 letter to the Court identifying the subject matter of her witnesses' testimony for the first time, after the discovery deadline passed, should not suffice because plaintiff "was well aware of these late-identified witnesses even before she filed this lawsuit," and (3) response to defendants' discovery demands was also insufficient because plaintiff failed to identify all but one witnesses in response to interrogatory number four.  Dkt. No. 71-8 at 3-4.  Finally, defendants contend that they are prejudiced by plaintiff's delays and the inadequacies of her responses because they were unable to properly plan for depositions.  Id. at 5.

## A.  Legal Standard

Rule 26(a)(1)(A)(i) provides, in pertinent part, that a party must, without awaiting a discovery request, provide to the other parties:

> the name and, if known, the address and telephone number of each individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment . . . .

Such information must be disclosed within fourteen days after the Rule 26(f) discovery conference unless a different time is set by stipulation or court order.  FED. R. CIV. P. 26(a)(i)(C).  Further, Rule 26(e)(1)(A) requires a party to supplement initial disclosures as additional witnesses and evidence become known.  FED. R. CIV. P. 26(e)(1)(A).  The supplementation must be made "in a timely manner . . . if the additional or corrective information has not otherwise been made known to the other parties during the

discovery process or in writing . . . ." FED. R. CIV. P. 26(e)(1)(A).

Fed. R. Civ. P. 37(c)(1) states, as relevant here,

> [i]f a party fails to provide information or identify a witness as
> required by Rule 26(a) or (e), the party is not allowed to use
> that information or witness to supply evidence on a motion,
> at a hearing, or at a trial, unless the failure was substantially
> justified or harmless.

"'The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party

with new evidence.'" Haas v. Del. & Hudson Ry. Co., 282 F. App'x 84, 86 (2d Cir. 2008)

(quoting Ebewo v. Martinez, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004)).

To determine whether evidence should be precluded, a court must consider

> (1) the party's explanation for the failure to comply with the
> discovery order; (2) the importance of the testimony of the
> precluded witness; (3) the prejudice suffered by the
> opposing party as a result of having to prepare to meet the
> new testimony; and (4) the possibility of a continuance.

Softel, Inc. v. Dragon Med. and Scientific Communications, Inc., 118 F.3d 955, 961 (2d

Cir. 1997) (citation omitted).  The Second Circuit has noted that

> [c]onsiderations of fair play may dictate that courts eschew
> the harshest sanctions provided by Rule 37 where failure to
> comply is due to mere oversight of counsel amounting to no
> more than simple negligence. But where gross professional
> negligence has been found that is, where counsel clearly
> should have understood his duty to the court the full range of
> sanctions may be marshalled.

Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062,

1068 (2d Cir. 1979) (internal citation omitted).  The Second Circuit has clarified that a

showing of bad faith is not required before evidence may be excluded under Rule

37(c)(1), but it may be taken into account.  Design Strategy, Inc. v. Davis, 469 F.3d 284,

296 (2d Cir. 2006).  The Second Circuit has called preclusion an 'extreme sanction[,]' advising that the Court should first "inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses."  Outley v. City of N.Y., 837 F.2d 587, 591 (2d Cir. 1988); Hinton v. Patnaude, 162 F.R.D. 435, 439 (N.D.N.Y. 1995) (noting that preclusion is a "drastic remedy" that should be considered only "in those rare cases where a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure.").   However, "'[d]espite the mandatory nature of Rule 37(c)(1), the Second Circuit has held that preclusion is a discretionary remedy, even if the trial court finds that there is no substantial justification and the failure to disclose is not harmless.'"  Leong v. 127 Glen Head Inc., No. CV 13-5528 (ADS/AKT), 2016 WL 845325, at *3 (E.D.N.Y. Mar. 2, 2016) (quoting Pal v. New York Univ., 06-CV-5892 (PAC/FM), 2008 WL 2627614, at *3 (S.D.N.Y. June 30, 2008). The consideration of whether these witnesses should be precluded from testifying at trial is within the sound discretion of the district court.  See, e.g., Hudson v. I.R.S., 03-CV-172 (TJM/RFT), 2007 WL 2295048, at *7 (N.D.N.Y. Mar. 27, 2007).  Further, "[a] party seeking to reopen discovery "bears the burden of establishing good cause and discovery should not be extended when there was ample opportunity to pursue the evidence during discovery."  Leong, 2016 WL 845325, at *3 (internal quotation marks and citation omitted).

**B.  Analysis**

Plaintiff contends that her production of the trial witness lists was not untimely,

but if even if it were, such delay was substantially justified and harmless due to defendants' (1) delay in responding to her discovery demands, (2) continued retaliation by means of a substantiated abuse charge against her, and (3) demand that they take plaintiff's deposition prior to any other witnesses, and scheduled her deposition a week before the end of the discovery period. Further, she argues that her answer to interrogatory number four was proper and responsive to the question.

### 1. Compliance with Rule 26(a)(1)(A)(i)

Although plaintiff submitted her initial Rule 26(a)(1) disclosure in September 2014, this list did not include the proposed subject matter of her witnesses. Further, many of these witnesses differ from the witness lists she provided on July 30, August 10, September 17, and September 28. Plaintiff appears to argue that she complied with Rule 26(a)(1)(A)(i) insofar as she "worked hard to keep Defendants apprised of all relevant information and worked even harder to keep up with Defendants' continuous retaliation against Plaintiff." Dkt. No. 72 at 5. Thus, plaintiff suggests that her delayed witness lists and list of the subject matter of the witnesses' testimony was necessitated by defendants' proceeding with an insubordination charge in an arbitration and a neglect to report abuse charge, requiring her to continuously update those witnesses she intended to call at trial.

First, it is clear that plaintiff did not timely comply with Rule 26(a)(1)(A)(i)'s requirement to provide the subject matter of the witnesses' testimony. Further, she did not comply with its requirement to timely produce the identity of the current witnesses.

Although plaintiff provided a witness list on September 14, 2014, July 30, 2015, August 10, 2015, and September 17, 2015, she did not provide the proposed subject matter of the witnesses until September 28, 2015 in her letter motion to the Court.  Dkt. Nos. 67, 71-2, 71-5, 71-6, 71-7.  Specifically addressing her failure to provide the subject matter of the witnesses' testimony, plaintiff cites Peterson v. Pan Am Railways, Inc., 12-CV-1857 (LEK/CFH), 2015 WL 2451227 (N.D.N.Y. May 21, 2015) and argues that courts hold that a failure to provide the subject matter of witnesses' testimony is not sufficient to preclude those witnesses from testifying.  Peterson is distinguishable.

In Peterson, the defendants failed to identify the expected subject matter of two of the witnesses' testimony.  Id. at *3.  However, the Court determined that the defendants' failure, although noncompliant with Rule 26, was harmless because the plaintiff was not prejudiced: "Defendants timely disclosed the names of these potential witnesses.  Plaintiff therefore had the opportunity to depose these potential witnesses and prepare his defense in response to their testimony."  Id.  Here, although plaintiff belatedly provided the subject matter of the witnesses on September 28, 2015, after the closure of discovery, the supplement is not harmless as defendants were not informed of the identity of the witnesses until September 17, 2015 – the day before the close of discovery – and September 28, 2015 – several days after the close of discovery.  See Dkt. No. 63.  None of the witnesses identified on the September 17 and September 28, 2015 witness lists were on any of the three earlier witness lists.  Unlike Peterson, plaintiff did not disclose to defendants the identity of the witnesses in question with sufficient time for defendants to obtain depositions; thus, the failure to provide the

11

subject matter of the witnesses' testimony cannot be said to be harmless.

## 2. Substantial Justification

### a. Plaintiff's Explanation

### i. Interrogatory Number Four

Plaintiff contends that her answer to interrogatory number four was sufficient insofar as she "reasonably believed that Defendants only asked for witnesses to actual events, which at the time was only Rebecca Meade[]." Dkt. No. 72 at 11. Further, plaintiff provides that her response indicated that Rebecca Meade was "an example of 'some examples' to be expanded upon at trial" and referred defendants to her document production. Id. Thus, it appears that plaintiff is contending that her response to defendants' interrogatory number four was proper because the interrogatory only asked for individuals who actually witnessed – which plaintiff appears to interpret as someone who viewed or otherwise has first had knowledge – the alleged incidents. As stated above, interrogatory number four asks plaintiff to "[i]dentify any individual that you, your counsel, or any investigator, or agent, are aware of that witnessed any of the events alleged in the above-captioned lawsuit, or any act, omission or wrong allegedly committed by any of the defendants." Dkt No. 71-3 at 3-4. Even accepting that plaintiff reasonably believed that defendants sought only those individuals who had first-hand knowledge of the acts alleged in the complaint, such as by viewing or hearing the incidents has they occurred, Rule 26(a)(1)(A)(i) requires parties to provide the name, address, and phone number of each individual likely to have discoverable information

along with the subjects of that information, "without awaiting a discovery request." FED. R. CIV. P. 26(a)(1)(A)(i). Thus, regardless of her interpretation, plaintiff was still required to provide defendants with all witnesses who were likely to have discoverable information as well as the subject matter of that information. Further, Rule 26(e) requires the parties to supplement Rule 26(a) or interrogatory disclosures where the party learns "that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" FED. R. CIV. P. 26(e).

Insofar as plaintiff's opposition may be read as arguing that her reference to her document production – which included depositions or other information relevant to the later-named witnesses – and providing that Rebecca Meade was "an example of 'some examples' to be expanded upon at trial" was sufficient to apprise them of witnesses beyond Rebecca Meade, see Dkt. No. 72 at 11, such general reference is clearly insufficient. Defendants were not required to cull the document production and assume that plaintiff would call at trial any number of the individuals mentioned therein. In Peterson, 2015 WL 2451227, at *4, defendants produced a supplemental Rule 26(a) disclosure providing, among other things, that they may seek to call at trial "[a]ny individual whose name appears on any documents marked as deposition exhibits or otherwise disclosed by either party during the course of the litigation." Id. The Court concluded that, with this disclosure, "[p]laintiff would not have been on notice to depose individuals who were merely mentioned in the course of discovery," and that the belated

disclosure of the witnesses' names did not cure the prejudice because the disclosure occurred after the close of discovery and the plaintiff did not have the opportunity to depose these witnesses.  Id.  Similarly here, the general reference to document production and the statement that Ms. Meade was "an example of examples" did not satisfy plaintiff's duties under Rule 26 regarding the additional witnesses.

Furthermore, even if the Court accepts counsel's argument, plaintiff's failure to provide additional witnesses in response to interrogatory was not justified due to Rule 26(a)(1) and (e)'s obligation on parties to provide such information, without waiting for a discovery request, and to continuously provide corrections or updates to these witnesses.  FED. R. CIV. P. 26(a)(1)(A)(i), e(1)(A).

### ii.  Defendants' Delay

Plaintiff contends that she was unable to identify these proposed witnesses earlier because

> [t]he importance and/or existence of many witnesses not already known to Defendants was not revealed until the review of Defendants' July 2, 2015, document production, which took Defendants nearly one year to produce, and the continued retaliation of Ms. Taylor by Defendants have forced plaintiff to amend her witness list to be able to fight Defendants' continuing retaliatory acts.

Dkt. No. 72 at 8.  The undersigned will first address the allegation regarding defendants' document production.

Defendants produced their document production, responsive to plaintiff's July 14, 2014 document request, on July 2, 2015, containing "12,749 electronic documents[.]"

14

Dkt. No. 72 at 7.  Plaintiff suggests that through the course of reviewing defendants'

document production, the importance or existence of these witnesses was revealed.

Dkt. No. 72 at 8.  She argues that she was not able to produce the witness names

sooner because defendants requested several extensions and required her to wait until

a week before the discovery deadline to take depositions.  Dkt. No. 72 at 6-7.  As

outlined above, the parties collectively requested, and the Court granted, three

discovery extensions.  Dkt. Nos. 47, 48, 56, 57, 62, 63.

Plaintiff further argues that "most of the individuals were known to Defendants

well before the last witness list was provided by Plaintiff."  Dkt. No. 72 at 13.  She

further suggests that she "produced over 3,200 documents where all witnesses were

identified."  Dkt. No. 72 at 13.  However, the mere fact that certain witnesses' names

were contained somewhere within plaintiff's discovery disclosures does not suffice to

inform defendants that plaintiff intended to call any of these witnesses at trial.  Indeed,

this logic of this argument is especially unclear if the undersigned accepts plaintiff

contention that she was not aware of the importance of the currently challenged

witnesses until completing review of defendants' July 2015 document production.  If

plaintiff maintains that she was not aware of the importance of these witnesses

contained in her own document production until she reviewed defendants' document

production, the undersigned cannot see how can she can reasonably maintain that

defendants should have predicted the witnesses she would wish to call merely from

perusing plaintiff's disclosures.

In assessing plaintiff's contention that she learned about the witnesses and the

importance or relevance of their testimony only after reviewing defendants' document production, the undersigned notes that plaintiff does not explain why she would have not been aware of these witnesses prior to serving the September 17, 2015 witness list.[7]  For example, it appears unlikely to the undersigned that defendants' July 2015 production would reveal to plaintiff for the first time the existence or significance of Danny Hakim who plaintiff states authored the November 2011 <u>The New York Times</u> article in which she was quoted.  Plaintiff does not proffer any reason as to why she would be unaware, prior to her review of the July 2015 discovery production was completed, of the importance of Mr. Hakim's testimony regarding the fact that he interviewed plaintiff and "published her report of abuse of consumers and identified her as whistleblower," especially because the article was published in November 2011.  Dkt. No. 71-1 at 7.   Further, plaintiff does not provide how Mr. Hakim would offer relevant testimony to her claims in this action.

Similarly, plaintiff fails to explain to the Court why any discovery delays on the part of defendants rendered her unaware of the importance of Brian Beaver, Bonnie Lawrence, Roy Schult, G.B., or G.P.  Plaintiff contends that "until recently," she planned to call Mr. Beaver as a character witness for Ms. Taylor and as someone who possibly witnessed defendants' retaliatory acts.  Dkt. No. 72 at 17.  However, due to Defendants' continuous retaliation, Mr. Beaver has become a key witness to both this case and Ms.

---

[7]  Plaintiff's intent to call as trial witnesses Beaver, G.P., G.B., Hakim, Lawrence, and Schult was revealed for the first time in plaintiff's September 17, 2015 witness list.  Dkt. No. 71-7.  Plaintiff's intent to call Wells and Mattoon as trial witnesses was first revealed in the September 28, 2015 letter brief.  Dkt. No. 67 at 4-5.

Taylor's abuse case."  Id.  Even if plaintiff were not aware that Mr. Beaver was a "key witness" until the July 2015 document production, if plaintiff intended to call Mr. Beaver as a character witness, as she contends in her opposition papers, she fails to explain why she did not reveal Mr. Beaver as an intended trial witness until September 17, 2015.  Similarly, plaintiff contends that she had intended to call Ms. Lawrence as a character witness.  Id.  Here, too, plaintiff fails to explain, if she intended to call Ms. Lawrence as a character witness initially, why she did not identify Ms. Lawrence in her 2014 Rule 26(a)(1)(A)(i) disclosure or any subsequent witness lists before the September 17, 2015 witness list.  Dkt. No. 71-7.

Plaintiff contends that A.B. is "the reason for this case" and that "this case would not exist but for A.B. and G.B."  Dkt. No. 72 at 14-15, 17.  G.B. is A.B.'s mother.  Id. at 17.  Plaintiff references being disciplined in 2011 for reporting A.B.'s abuse.  Id. at 14.  If plaintiff's whistleblowing of A.B.'s abuse underlies the retaliation at issue, plaintiff does not explain why she was unaware the importance of having G.B. testify at trial until September 17, 2015.  Dkt. No. 71-7.

G.P. is the individual plaintiff who allegedly abused in the 2014 neglect to report abuse charge.  Dkt. No. 72 at 18.  Mr. Schult is his legal guardian.  Id.  As plaintiff provides, both of these individuals testified "in her defense" during the March 2015 arbitration regarding the neglect to report abuse charge.  Id.  Even if the undersigned accepts that plaintiff would not know the substance of their testimony until the March 2015 arbitration, it would appear that she would know their importance prior to identifying them as trial witnesses for the first time in her September 28, 2015 letter

17

brief to the Court.

In sum, the undersigned concludes that any delay by defendants in providing plaintiff with responses to her discovery demands does not justify her failure to t reveal her intent to call Mr. Beaver, G.B., G.P., Mr. Hakim, Ms. Lawrence, Mr. Schult until September 17, 2016, and to identify Ms. Wells or Ms. Mattoon as intended trial witnesses or provide the proposed substance of these witnesses' testimony until September 28, 2015.

### iii. Defendants' Continued Retaliation

Plaintiff argues that her belated production of certain witnesses was defendants' fault because of their "retaliation" by means of (1) an arbitration stemming from an insubordination charge, and (2) a Justice Center for the Protection of People with Special Needs ("Justice Center") investigation stemming from a February 2014 alleged neglect to report abuse, which required her to "constantly update her position and the witnesses that would be relevant to defend herself against Defendants' continuing campaign." Dkt. No. 72 at 5-6, 8. Plaintiff provides that she was faced with an insubordination charge, which led to an arbitration at which Brian Beaver, Bonnie Lawrence, and Roy Schult, among others, testified, and resulted in a settlement permitting her to retire and earn pension benefits beginning on her fifty-fifth birthday. Dkt. No. 72 at 5. Further, in November 2014, the Justice Center informed plaintiff of a substantiated charge against her resulting from a neglect to report the abuse of an OPWDD client which had occurred February 2014. Dkt. Nos. 67 at 4, 72-18 at 4.

18

Plaintiff contends that "[o]nly recently, and after discovery had closed, did Plaintiff fully understand the vital importance of Brian Beaver, Bonnie Lawrence, Roy Schult, G.P. and their criticalness to the neglect-to-report abuse charge . . . ." Dkt. Nos. 72 at 12, 67 at 4.[8] Plaintiff further suggests that she was unaware that defendants would question her about the arbitration or her "entire disciplinary history"; thus, it was not until she was aware of this approach that she knew to identify "those witness who could testify to rebut Defendants' claim that Plaintiff had a disciplinary history." Id. ("[O]ne week before the close of discovery, [at her deposition,] Plaintiff learned that her entire disciplinary history was going to be the focus of Defendants' defense . . . . At Plaintiff's deposition on September 11, 2015, Defendants questioned Plaintiff about the arbitration and the events in at issue during the arbitration.").

Defendants reject plaintiff's argument that she did not learn that her entire disciplinary history would be a focus of their defense until one week before the close of discovery (Dkt. Nos. 67 at 4, 72 at 8), as plaintiff's third amended complaint, by citing 2004, 2011, and 2014 discipline and counseling records, places her past work history in issue. Dkt. No. 73 at 8-9. Further, as defendants point out, notice of plaintiff's substantiated neglect to report abuse charge is dated November 6, 2014, and plaintiff indicates she appealed this charge in 2014, suggesting that plaintiff was aware of the substantiated finding since this date or shortly thereafter. Dkt. No. 72 at 12; see generally Dkt. No. 72-18.

---

[8] Plaintiff's counsel includes this statement in his letter brief in opposition, Dkt. No. 67, but does not include this claim in his brief in opposition to defendants' motion to compel, instead stating generally that she did not learn of these witness' importance until "after discovery had closed." Dkt. No. 72 at 12.

Plaintiff states that it was not until discovery had closed, or until her deposition was taken, was she aware that defendants planned to attack her entire disciplinary history. Although plaintiff's third amended complaint does not discuss the 2014 neglect to report abuse charge,[9] it does discuss a December 2, 2014 notice of insubordination charge and refers to this charge as further evidence of retaliation. Dkt. No. 58 at 10-12. From what the undersigned can gather, the December 2, 2014 insubordination charge is the same charge that lead to the March 2015 arbitration discussed in plaintiff's memorandum in opposition to the motion to preclude. Thus, the undersigned concludes that this claim is contradicted by the fact that plaintiff is contending that the arbitration and subsequent justice hearing are a form of retaliation itself. Dkt. No. 72. Although plaintiff did not sit for her deposition until September 2015, the insubordination arbitration at which Schult, Beaver, and Lawrence testified occurred in March 2015, which indicates that she would know of their "criticalness to the neglect to report abuse charge" at that time. Dkt. No. 72 at 10, 12.[10]

Therefore, although plaintiff argues she has no way of knowing about defendants' litigation strategy prior to her deposition, Dkt. No. 72 at 14, the undersigned finds it unlikely that plaintiff was surprised by defendants' inquiry into her work disciplinary history, including the insubordination and neglect to report abuse charges. This is especially true because plaintiff's complaint charges defendants with First

---

[9] The undersigned does observe that plaintiff would have known about the substantiated charge at the time she filed her amended complaint as the neglect to report abuse charge is dated November 6, 2014, and her amended complaint is dated December 23, 2014. Dkt. Nos. 58, 72-18 at 4.

[10] In her response in opposition to defendants' motion to preclude, plaintiff states that the arbitration occurred in April 2015. Dkt. No. 72 at 12.

Amendment retaliation in violation of 42 U.S.C. § 1983; discrimination under Section 504 of the Rehabilitation Act; and aiding and abetting discrimination in violation of New York State Executive Law § 296, the New York Human Rights Law.  At least with the First Amendment retaliation and section 504 discrimination claims, courts apply a burden-shifting approach where, after the plaintiff demonstrates a prima facie case of retaliation or discrimination, the burden shifts to the defendant to demonstrate that the adverse employment action would have occurred even in absence of the employee's protected conduct.  For instance, it is well settled that in First Amendment retaliation claims,

> a plaintiff must show that (1) she engaged in "constitutionally protected speech" because she spoke as a citizen on a matter of public concern; (2) she suffered an adverse employment action; and (3) the speech at issue was a substantial or motivating factor in the decision.  Johnson, 342 F.3d at 112.  *If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the government employer to offer some legitimate, non-retaliatory rationale for its actions*.  See Jeffries v. Harleston, 52 F.3d 9, 13 (2d Cir.1995).  In other words, the burden shifts to the defendant "to show that it would have taken exactly the same action absent the improper motive."  Scott v. Coughlin, 344 F.3d 282, 288 (2d Cir. 2003).  *If the defendant does so, then the burden then shifts back to the plaintiff to demonstrate by competent evidence that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for [retaliation]*."  Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 221 (2d Cir. 2004).

Dillon v. Suffolk County Dept. of Health Services, 917 F. Supp. 2d 196, 204 (E.D.N.Y.

2013) (emphasis added).[11]  Similarly, to state a claim for retaliation in violation of

section 504 of the Rehabilitation Act,

> the plaintiff must allege that "(i) [she] was engaged in
> protected activity; (ii) the alleged retaliator knew that plaintiff
> was involved in protected activity; (iii) an adverse decision or
> course of action was taken against plaintiff; and (iv) a causal
> connection exists between the protected activity and the
> adverse action."

Collins v. City of N.Y., ___ F. Supp. 3d ___ 2016 WL 127591, at *7 (S.D.N.Y. Jan. 11,

2016) (quoting Weixel v. Board of Educ. of City of N.Y., 287 F.3d 138, 148 (2d Cir.

2002)).[12]  Similar to a First Amendment retaliation claim, where a plaintiff has

demonstrated a prima facie case of discrimination in violation of section 504, the

burden shifts to the defendant to demonstrate that the adverse action it took was not on

the basis of the plaintiff's disability.  If the defendants make this showing, the burden

shifts back to the plaintiff to show that the defendants' proffered reason was pretextual.

See, e.g., Sacay v. Research Foundation of City Univ. of N.Y., 193 F. Supp. 2d 611,

630-31 (E.D.N.Y. 2002) (noting that McDonnell Douglas Corp. v. Green, 411 U.S. 792,

802-03 (1973) burden shifting applies to discrimination claims under Rehabilitation

Act)).

     Thus, it appears to the undersigned that plaintiff should have reasonably

---

[11]  "Although a First Amendment retaliation claim under section 1983 is not evaluated using the McDonnell Douglas burden-shifting methodology, it too involves consideration of whether the plaintiff experienced an adverse action related to his or her employment as a result of protected conduct as opposed to alternative, legitimate, work-related reasons."  Matusick v. Erie Cnty. Water Auth., 757 F. 3d 31, 47 (2d Cir. 2014).

[12]  "The Rehabilitation Act protects individuals who oppose any practice that the Rehabilitation Act makes illegal."  Collins, 2016 WL 127591, at *7 (citing 29 C.F.R. 1614.101(b)).

anticipated that, (1) if she should sufficiently demonstrate that she suffered retaliation and discrimination, defendants would then have to demonstrate that they would have taken these actions even absent plaintiff's exercise of protected speech, and, (2) if defendants made that demonstration, plaintiff then must demonstrate that the defendants' legitimate, nondiscriminatory reasons were pretextual. See, e.g., Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999) (citation omitted); see also Crawford-El v. Britton, 523 U.S. 574, 593 (1998) (citation omitted).

Further, as defendants point out, plaintiff's amended complaint references a large stretch of her disciplinary history, going back as early as 2004, 2011, and 2013, and references other instances regarding notices of discipline and claims of insubordination, it appears unlikely that plaintiff would be unaware prior to her deposition, that defendants would seek to address the entirety of her disciplinary history. Dkt. No. 58 at 6-11, 15. Thus, the undersigned concludes that any delay in defendants' document production does not justify plaintiff's waiting until September 17 and 28, 2015 to notify defendants about her intent to call these witnesses, and until September 28, 2015 to provide the subject matter of their testimony.


### iv. Plaintiff's Deposition before Others

Plaintiff argues that any delay in providing her witness lists was also because defendants "demanded Plaintiff wait until the completion of her deposition and the deposition of the plaintiff in Jeffery Monsour v. POWDD et. al., 1:13-CV-0335 (TJM)(CFH) (N.D.N.Y.) before allowing Plaintiff to depose any witness" and gave her

"one week for both plaintiffs to take all depositions."  Dkt. No. 72 at 6, 8.

Defendants reject plaintiff's assertion that they required plaintiff wait until her deposition was complete before allowing her to depose any witnesses, noting that this was a requirement set by the Assistant Attorney General in Monsour, the case coordinated with plaintiff's case for discovery purposes, and that "AAG Lynch has provided a sworn statement in the Monsour case, as well as in an email chain involving her and Mr. Sandowski" which "clearly evidence the fact that plaintiff's counsel was not prevented from taking depositions, since AAG Lynch was amenable to such depositions taking place even in March of 2015."  Id. at 4-5 (citing Monsour, 1:13-CV-336 (TJM/CFH), Dkt. Nos. 72-2 ¶23, 72-13).[13]

To the extent that the defendants' scheduling of witnesses too close to the end of the discovery deadline resulted in plaintiff being unable to call as many witness as she would have preferred, plaintiff does not provide whether she objected to this scheduling.  She also does not explain why she did not reach out to the Court for assistance if she felt that defendants' scheduling would prevent her from being able to complete all necessary depositions.  Accordingly, the undersigned is unconvinced that defendants' scheduling of depositions justifies plaintiff's delay.

### c. Importance of Testimony

---

[13]  In their Reply, defendants object to the "unsworn statements made by [plaintiff's] counsel in her legal brief" because the statements are "legally worthless" and "also inaccurate."  Dkt. No. 73 at 3-4. Defendants observe that the "objectionable statements" are absent from the declaration by plaintiff's counsel.  Id. at 4.

Plaintiff contends that the seven witnesses in question are of "vital importance" to her case. Dkt. No. 72 at 12. It is difficult for the Court to determine the significance of these witnesses' testimony, as plaintiff provides in only very general terms the proposed testimony of these witnesses. Dkt. No. 72 at 17-18. However, the Court will proceed with review of this factor based on the information provided.[14]

### i. Danny Hakim

First, plaintiff, in her letter to the Court, states that Danny Hakim authored an expose on "waste, fraud, and abuse committed by OPWDD" and that the "interviewed Plaintiff and published her report of abuse of consumers and identified her as a whistleblower." Dkt. No. 67 at 6. Plaintiff does not explain why Mr. Hakim's testimony at trial is important to her claims that defendants retaliated against her in violation of her First Amendment rights, Section 504 of the Rehabilitation Act, and N.Y. Exec. Law § 296.6. Plaintiff merely provides that Mr. Hakim interviewed her for his article, but does not explain how he has any personal information regarding the retaliation she faced as result of her protected speech. It would appear that any testimony Mr. Hakim would have to offer would be based on the statements plaintiff made to him for his article rather than from any personal knowledge. It appears unlikely that any testimony Mr. Hakim may have to offer would be distinct from what plaintiff could testify about in

---

[14] The undersigned is cognizant that plaintiff would not necessarily know the exact content of the testimony of these witnesses if they have not yet been deposed. However, the Court is not stating that such exacting detail is required, merely that the Court needs sufficient specificity to make an assessment of this factor.

relation to the contents of the article. Plaintiff fails to explain why such testimony would not be cumulative of her own. Moreover, plaintiff's third amended complaint suggests that protected speech for which she faced retaliation was, at least in part, her statements published in The New York Times. Dkt. No. 58 at 15 ("Plaintiff had a first Amendment right to speak out on matters of public concern. As a whistleblower, Plaintiff brought matters of obvious public concern to The New York Times, which published her concerns."). If retaliation as a result of her whistleblowing to the newspaper is the subject of her retaliation claim, plaintiff does not explain how Mr. Hakim would have knowledge about retaliation she faced *subsequent to*, and *as a result of*, her reports to the newspaper. Thus, plaintiff has not shown that Mr. Hakim's testimony is important, and, as to this witness, this factor leans in favor of preclusion.

### ii. Allison Mattoon and Juanita Wells

Plaintiff contends that Allison Mattoon and Juanita Wells "are important witnesses to Plaintiff's direction under Ms. Turck." Dkt. No. 72 at 18. In her letter to the Court, plaintiff provided some additional information. Plaintiff sets forth identical statements regarding Ms. Mattoon and Ms. Wells' proposed testimony – the women "worked in the McChesney home with Plaintiff and has knowledge that under Defendant Turck's leadership, McChesney became a hostile environment for Plaintiff and all that defended her." Dkt. No. 67 at 6, 8. Although plaintiff provides very general statements of Mattoon and Well's proposed testimony, if it is the case that these witnesses have knowledge of defendants' conduct toward plaintiff while she was under defendant

26

Turck's supervision at McChesney, such could have importance in supporting her claims that, as a result of her whistleblowing, she was retaliated against and harassed by defendant Turck.

Despite the apparent importance of Ms. Mattoon and Ms. Wells' testimony to her case, why plaintiff failed to inform defendants of her desire to have these witnesses testify at trial at any date prior to the September 28, 2015 letter to the Court is inexplicable. Plaintiff contends that defendants were sufficiently aware of her desire to have Ms. Mattoon and Ms. Wells testify at trial because she issued notices of deposition regarding these individuals by e-mail to defense counsel on November 6, 2014. However, defense counsel informed plaintiff that the date she selected, December 8, 2014, was a religious holiday, and, thus, he would not be able to attend depositions on that date. Dkt. No. 71-8 at 7. n.1. According to defendants, plaintiff did not seek to reschedule the depositions of Ms. Mattoon or Ms. Wells. Dkt. No. 73 at 6-7. By contrast, plaintiff contends that these depositions were not rescheduled because defendants refused to participate in more than ten depositions, and she "was forced to cut down to ten (10) people for depositions that took place the last week of discovery." Dkt. No. 72 at 18; see also Dkt. No. 72-1 at 3 ¶15. She also argues elsewhere in her brief that the depositions did not occur because defendants "objected to Plaintiff taking any depositions prior to Defendants' deposition of Plaintiff." Dkt. No. 72 at 6, 8.

As plaintiff knew that these witnesses were important to her case as early as November 2014, when she e-mailed defense counsel notices of deposition, plaintiff does not explain why she did not present Ms. Mattoon or Ms. Wells as potential trial

27

witnesses in response to interrogatory number four or on her July 30, 2015, August 10, 2015, or September 17, 2015 witness lists. As defendants contend, notice of depositions are not sufficient to inform opposing counsel of an intent to call such persons as trial witnesses. Plaintiff does not provide evidence of defendants' objection to taking more than ten depositions nor does she demonstrate an attempt to reschedule these depositions after defense counsel explained that he could not sit for depositions on the date she initially selected.

On balance, despite plaintiff's lack of justification, it appears that the testimony of Ms. Wells and Ms. Mattoon would be important to plaintiff in presenting her claims and defenses at trial.

### iii. Bonnie Lawrence

Plaintiff explains that Bonnie Lawrence "was a co-worker with Plaintiff who, until recently, was going to be called as a character witness for Ms. Taylor; however, due to Defendants' continuous retaliation, Ms. Lawrence has become a key witness to both this case and Ms. Taylor's abuse case." Dkt. No. 72 at 17. In the September 28, 2015 letter motion, plaintiff provides only that Ms. Lawrence "is Plaintiff's co-worker, who will testify about Plaintiff's competence and Defendants' retaliation against Plaintiff." Dkt. No. 67 at 6. Plaintiff does not explain why Ms. Lawrence is a "key witness" to any of the alleged retaliatory acts. Further, she does not explain what information was revealed through the July 2015 document production that caused her to belatedly realize Ms. Lawrence's significance. Indeed, Ms. Lawrence was not included in the July 30, 3015

or August 10, 2015 witness lists. Although it is very difficult to determine this witness' importance to plaintiff's case where plaintiff provides such little information about her proposed testimony, and the undersigned is troubled by plaintiff's failure to identify Ms. Lawrence given that it was her original intent to have Ms. Lawrence testify as a character witness, if it is the case that Ms. Lawrence has knowledge about defendants' retaliatory conduct, such testimony could be of importance to plaintiff's claims.[15] Thus, this factor leans slightly against the preclusion of this witness' testimony.

### iv. G.P.

Plaintiff contends that G.P. is an "OPWDD consumer with whom Plaintiff worked," and contends that G.P. will testify "how good Plaintiff was to him and to the abusive atmosphere at OPWDD." Dkt. No. 72 at 18. She contends further that G.P. "is the consumer in which Ms. Taylor has allegedly abused and is a key witness to Ms. Taylor's abuse charges." Dkt. No. 72 at 18. Plaintiff states that G.P. "testified in Ms. Taylor's defense during the arbitration in which Defendants attempted to terminate Ms. Taylor for insubordination." Id. Again, plaintiff fails to explain to the Court why she "only recently learned the full importance" of G.P.'s testimony in this case, if it is true that G.P. (1) is a "key witness" to the abuse charges, which were found substantiated as of November 2014, and (2) testified on her behalf during the insubordination

---

[15] The undersigned recognizes that Rule 26(a)(1)(A)(i) does not require parties to disclose witnesses who would be used solely for impeachment. FED. R. CIV. P. 26(a)(1)(A)(i). However, plaintiff does not argue, nor does it appear to be the case, that a character witness falls into the "solely for impeachment" category excluded from required disclosure.

arbitration, which occurred during March 2015, clearly earlier than the July 2015 document production. Thus, it appears unlikely that plaintiff would not have known about the importance of G.P.'s testimony to her retaliation case until the July 2015 document production. Despite the undersigned's conclusion that plaintiff's belated disclosure of her intent to call G.P. at trial is not justified, as G.P. is the subject of the failure to report abuse charge, which plaintiff alleges is a further method of retaliation, his testimony may be important to rebut a claim that she neglected to report his abuse. Thus, the apparent importance of this witness tips this factor against preclusion of this witness.

### v. Roy Schult

Plaintiff contends that Roy Schult's testimony is important because he is G.P.'s guardian. Dkt. No. 72 at 18. Plaintiff provides that Mr. Schult will testify to plaintiff's "good work and that OPWDD staff were abusive to G.P., and that he removed G.P. from OPWDD's care as Ms. Taylor's continuous concerns went unnoticed." Dkt. No. 72 at 18. She argues that Mr. Schult is a "key witness to Ms. Taylor's abuse charge," and provides that Mr. Schult testified in her defense during the arbitration. Id. Again, despite Mr. Schult being a "key witness," and one who testified at the March 2015 arbitration, plaintiff fails to explain how she only learned the "full importance" of Mr. Schult's testimony after defendants' document production. Dkt. No. 72 at 15. However, as plaintiff's limited statement suggests that Mr. Schult may have knowledge regarding incidents that plaintiff reported regarding her concern with G.P., such testimony would

likely be of importance to her claims that defendants retaliated against her for reporting concerns regarding the care of residents. Thus, as to this witness, this factor leans against preclusion of Mr. Schult's testimony.

### vi. G.B.

G.B. is a parent of "former consumer A.B." Dkt. No. 72 at 17. Plaintiff argues that G.B.'s testimony is important because "Defendants disciplined Plaintiff for reporting abuse of A.B., and G.B. is A.B.'s mother." Dkt. No. 72 at 14. However, if plaintiff were retaliated against in part for reporting the abuse of A.B. while in OPWDD care, plaintiff does not explain why she would not have been aware earlier of the importance of G.B.'s testimony. Dkt. No. 72 at 15. Plaintiff further contends that her Rule 26 response "included the current abuse charge . . . and all documents related to A.B., who was the subject of Plaintiff's whistleblowing – the reason for this case." Dkt. No. 72 at 15. As already discussed, a mere reference to discovery responses that may include documentation that mentions a witness, without the party actually identifying an intent to call the individual witnesses, does not serve to provide the opposing party with sufficient notice. Peterson, 2016 WL 2451227, at *4 (a Rule 26 disclosure that informed the plaintiff that the defendants may seek to depose "[a]ny individual whose name appears on any documents marked as deposition exhibits or otherwise disclosed by either party during the course of litigation" was not sufficient to place the plaintiff on notice of an intent to call a witness who was not specifically identified by the defendants as someone who may be called at trial."); see also Lujan v. Cabana Mgmt., Inc., 284

F.R.D. 50, 73 (E.D.N.Y. 2012) ("[T]he fact that some of the witnesses in the instant case were included in a 667-person list of Cabana employees is not an adequate substitute for a supplemental disclosure under Rule 26."); Pal, 2008 WL 2627614, at *4 ("Pal's knowledge of the existence of a witness does not satisfy Rule 26(a)(1)(A) disclosure obligation; that obligation is fulfilled only if NYU informed Pal that it might call the witness in support of its claims or defenses."). On balance, the apparent importance of this witness' testimony leans against preclusion.

### vii. Brian Beaver

In his letter brief to the Court, plaintiff's counsel provided little information about Mr. Beaver and the importance of his testimony, stating, "Mr. Beaver was a co-worker with Plaintiff and witnessed some of Defendants' retaliatory actions." Dkt. No. 67 at 5. Similar to her arguments for Ms. Lawrence, plaintiff also contends that, "until recently," Mr. Beaver "was going to be called as a character witness for Ms. Taylor and who possibly witnessed some retaliatory actions against Ms. Taylor." Id. at 17. However, due to defendants' "continuous retaliation, Mr. Beaver has become a key witness to both this case and Ms. Taylor's abuse case." Dkt. No. 72 at 17.

First, plaintiff does not explain why she did not disclose Mr. Beaver as a potential trial witness prior to September 17, 2015 if she intended to call Mr. Beaver as a character witness and as someone who may have been a witness to retaliatory

conduct.[16]  Second, plaintiff again fails to explain, even in general terms, the likely substance of Mr. Beaver's testimony that makes him a "key witness," making it difficult for the undersigned to assess the importance of his likely testimony.  However, if it is the case that Mr. Beaver witnessed certain retaliatory conduct, such testimony may be of importance to plaintiff's case.  Thus, this factor leans against preclusion of this witness.

### d.  Prejudice to Defendants

Plaintiff argues that defendants are not prejudiced by any delay in providing the identity or substance of the eight witnesses in question.  In so arguing, she contends that "the vast majority of the witnesses are state employees who can be interviewed at the Defendants' convenience," "Defendants were well aware of the identify of the witnesses," and "Plaintiff has consented to an extension of Discovery if any witnesses are to be deposed by Defendants."  Dkt. No. 72 at 6.  Defendants do not dispute that the prejudice incurred by the late-identified witnesses and subject matter would be largely cured by extending discovery to permit defendants an opportunity to depose these witnesses; however, defendants contend that this Court should not exercise its discretion to permit a continuance due to plaintiff's purposeful delay.  Dkt. No. 71-8 at 15.

Specifically addressing Ms. Mattoon and Ms. Wells, plaintiff appears to suggest

---

[16]  This statement further conflicts with plaintiff's statement that she responded to defendants' interrogatory number four with only Ms. Meade because she believed defendants were only seeking those who were direct witnesses to retaliatory conduct.  Dkt. No. 72 at 11.

that defendants were not prejudiced by her belated identification of these witnesses because she filed notices of deposition for these individuals in November 2014; thus, defendants knew of their identity and her intent to obtain their testimony.[17]  Dkt. No. 72 at 13-14.  However, as earlier indicated, this Court has held:

> [t]he fact that a party may give notice of its intent to take the deposition of a witness indicates at most that the party intends to obtain discovery from the witness, not that the party intends to call that person as a witness at trial. Whether a person whose deposition is taken may also be called as a witness at trial and, if so, by what party remains a separate determination.

Kullman v. New York, No. 07-CV-716 (GLS/DRH), 2009 WL 1562840, at *6 (N.D.N.Y. May 20, 2009).  Despite receiving the notices of deposition, defendants would not have been on notice to depose these individuals as plaintiff did not inform them of her intent to have these witnesses serve as trial witnesses – indeed, as mentioned previously, plaintiff did not end up deposing these witnesses at all, despite providing the notice. Leong, 2016 WL 845325, at *4 ("The case law makes clear that, even if Defendants were aware that these individuals existed, that awareness did not absolve Plaintiff of her Rule 26(a)(1)(A) disclosure obligation, which is fulfilled only if Plaintiff informed Defendant that she might call the witnesses in support of her claims or defenses.") (internal citation, quotation marks, and brackets omitted).  Even if defendants were aware of the *identity* of Ms. Mattoon and Ms. Wells – though not plaintiff's intent to call

---

[17]  Defendants also argue that the notices of deposition were improper, providing that plaintiff unilaterally selected a Roman Catholic holiday. . . for the date of these depositions, which the undersigned opposed for that reason.  Plaintiff never again sought to depose these two witnesses."  Dkt. No. 71-8 at 7. n.1.

them as trial witnesses – plaintiff provides no evidence that defendants would have any

knowledge of the *scope* of these individuals' knowledge. "'[A] failure to disclose witness

information is 'harmless' if the other party was well aware of the identity of the

undisclosed witnesses and the scope of their knowledge well before trial.'" Barkley v.

Pennyan Sch. Dist., 05-CV-6592, 2009 WL 2762272, at *10 (W.D.N.Y. Aug. 25, 2009)

(citations omitted).  Thus, plaintiff's failure to disclose Ms. Mattoon and Ms. Wells was

not cured by her serving notices of deposition – depositions of which were never

actually held – in November 2014.  Plaintiff offers no good explanation for why these

names were not included in her Rule 26 disclosures or subsequent "witness lists" or

why she did not seek to reschedule these parties' depositions after defense counsel

informed plaintiff of his unavailability.[18]  Thus, the undersigned concludes that

defendants are prejudiced by plaintiff's failure to disclose the identity and subject matter

of Ms. Mattoon and Ms. Well's trial testimony until September 28, 2015, after the close

of discovery.

    As for the remainder of the witnesses, defendants do not disagree that they

knew of the identity or existence several of these potential witnesses through document

discovery, interrogatories, and depositions, but knowledge of the existence of that

---

[18]  Plaintiff contends that she did not obtain depositions of Mattoon or Wells because defendants objected to Plaintiff taking any depositions prior to Defendants' deposition of Plaintiff."  Dkt. No. 72 at 6.  Defendants vehemently disagree with this statement, contending that it was defense counsel in Monsour who set forth this requirement, and indicating that defense counsel did not preclude other depositions.  Even if this is the case, plaintiff does provide whether she attempted to reschedule the depositions of Mattoon or Wells.  In her motion in opposition, plaintiff contends that Mattoon and Wells were unable to be deposed, as Plaintiff was forced to cut down to ten (10) people for depositions that took place the last week of discovery."  Dkt. No. 72 at 17-18.

person does not equate to knowledge that plaintiff will call that individual at trial.  Dkt. No. 71-8 at 13-17.  Courts in this Circuit have held that a defendant is prejudiced when discovery is closed in a case, and permitting witnesses would require the Court to reopen discovery for additional depositions, resulting in further delay of the case and additional litigation costs.  Pal, 2008 WL 2627614, at *5.  Even if it is the case that defendants knew, prior to plaintiff's serving her witness lists, that some of the individuals may have knowledge of plaintiff's alleged claims due to the fact that they are employees of defendant OPWDD, any suggestion that defendants should have anticipated that plaintiff would call some of these witnesses at trial because they are defendants' employees or former employees is "unpersuasive and runs counter to the purpose of Rule(a)(1)(A)."  Leong, 2016 WL 845325, at *4.

### d.  **Availability of Continuance**

As discussed above, plaintiff has not demonstrated that her failure to disclose the relevant witnesses at issue or the substance of their testimony was substantially justified or harmless.  Indeed, the first factor – a party's explanation for its failure to comply with discovery – weighs in favor of preclusion for the reasons discussed above.  The second factor, the importance of the testimony to plaintiff's case – appears to favor plaintiff, excepting Mr. Hakim.  As discussed, plaintiff asserts that the remaining witnesses will testify either about the hostile environment created by defendants, specific acts of retaliatory conduct committed by defendants, or the failure to report

abuse charge. If it is the case that these witnesses have such knowledge, such testimony could be of significant importance to plaintiff's case because these issues are directly related to the claims alleged in this case. The third factor, prejudice to defendants, weighs in favor of preclusion as well, for the reasons stated above. Finally, as to the fourth factor – availability of a continuance, the Eastern District, acknowledging that "'a continuance is always theoretically possible, [and] the closure of discovery weighs against a continuance,'" concluded that "this factor is neutral and does not weigh in favor of either party." Leong, 2015 WL 845325, at *6 (quoting Lujan, 284 F.R.D. at 76). The undersigned agrees with the Eastern District's logic that a continuance is a possibility in the majority of cases; thus, the fact that the court can grant a continuance here, as it can in many cases, does not weigh in favor of either party. Id.

Although the balance of the factors weigh in favor of preclusion, the undersigned is cognizant that preclusion is an "extreme sanction"; thus, the Court must assess "the actual difficulties which the violation causes and most consider less drastic responses." Outley, 837 F.2d at 591. As noted herein, it is difficult for the Court to evaluate the importance of the majority of these witnesses' testimony or the prejudice their expected testimony would impose on defendants' trial preparation on the present record before the Court. However, were the Court to preclude these witnesses from testifying at trial, as plaintiff asserts that many of these witnesses have direct knowledge of the discrimination she faced, it is likely that plaintiff would suffer a substantial impediment in proceeding with her case in the absence of many of these witnesses' testimony.

Although the undersigned finds that plaintiff failed to comply with Rule 26(A)(1)(A)(i) and e(1), insofar as she (1) failed to provide the subject matter of her trial witnesses before the close of discovery, (2) waited until the day before discovery to provide the identity six of the eight witnesses defendants seek to preclude, and (3) waited until ten days after the close of discovery to provide the identity of two of the witnesses, the undersigned does not feel that preclusion is warranted. The undersigned recognizes that plaintiff's failure is not as extreme as the violations in cases that courts in this Circuit have sought to preclude; indeed, this is "not a case 'where the disclosing party waited until the eve of trial to disclose its witnesses.'" Peterson, 2015 WL 2451227, at *4 (quoting LaVigna v. State Farm Mut. Auto. Ins. Co., 736 F. Supp. 2d 504, 511 (N.D.N.Y. 2010)).

Although discovery ended in September 2015, a continuance is possible here. The case is not yet trial ready, as parties still must be afforded an opportunity to submit dispositive motions. Thus, the undersigned finds that, even though plaintiff has not shown that her failure to timely supplement her Rule 26(a)(1) disclosures was justified or is harmless, the majority of these witnesses defendants seek to preclude are likely of importance to plaintiff's case. The undersigned finds differently, however, regarding Danny Hakim. Plaintiff has entirely failed to demonstrate the importance of Danny Hakim's testimony. See supra at 24-25. As plaintiff's failure to disclose Mr. Hakim as a potential trial witness prior to September 17, 2015, the day before discovery ended, was not substantially justified, and that she has failed to demonstrate, to even a slight degree, the importance of his testimony at trial, the undersigned concludes that the

balance of factors weighs in favor of precluding Mr. Hakim from testifying at trial.

In sum, defendants' Rule 37 motion is granted in part and denied in part. The Court will issue a continuance, opening discovery for thirty days from the entry of this Memorandum Decision and Order for the limited purpose of allowing parties to depose seven of the eight witnesses set forth herein. Costs associated with these depositions, including ordering expedited copies of transcripts of any depositions taken and any travel expenses incurred by defendants in connection with the additional depositions, but excluding the hourly costs of the defense attorneys in attending or preparing for the depositions, will be bourne by plaintiff.

### III. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED**, that defendants' motion for sanctions (Dkt. No. 71) seeking to preclude plaintiff from offering the testimony of certain witnesses at trial pursuant to Fed. R. Civ. P. is **GRANTED in part**, insofar as plaintiff is precluded from offering as a trial witness Danny Hakim, and **DENIED in part**, insofar as plaintiff is not precluded from offering as trial witnesses the following individuals: Brian Beaver, G.B., G.P., Bonnie Lawrence, Roy Schult, Allison Mattoon, and Juanita Wells, and it is further

**ORDERED**, that discovery will be reopened for **THIRTY (30) days** following the date of entry of this Memorandum-Decision and Order for the limited purpose of obtaining depositions of Brian Beaver, G.B., Bonnie Lawrence, Roy Schult, Allison Mattoon, G.P., and Juanita Wells, and it is further

**ORDERED**, that expenses incurred as a result of these depositions, should any

be taken, will be bourne by plaintiff as set forth herein; and it is further

**ORDERED**, that parties have **sixty (60) days** following the expiration of the thirty

(30) day discovery continuance to file any dispositive motions with the Court;

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-

Decision and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated: May 11, 2016
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge